## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

EUREKA FORD,                                    :

     Plaintiff,                              :

vs.                                             :          CA 20-0457-MU

KILOLO KIJAKAZI,                                :
Acting Commissioner of Social Security,
                                                :
     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Eureka Ford brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 23 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1]     The parties waived oral argument. (*See* Docs. 20 & 22).

[2]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 23 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of (Continued)

## I. Procedural Background

Plaintiff filed an application for disability insurance benefits on June 14, 2018, alleging disability beginning December 10, 2016[3]. (*See* Doc. 15, PageID. 247-48*).* Ford's claim was initially denied on September 6, 2018 (*see id.,* PageID. 157 & 181-86), and, following Plaintiff's September 26, 2018 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 203), a hearing was conducted before an ALJ on September 17, 2019 (*id.,* PageID. 105-42). On October 11, 2019, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to disability insurance benefits. (*Id.,* PageID. 85-100). More specifically, the ALJ determined at the fifth step of the sequential evaluation process that Ford retains the residual functional capacity to perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 94-99; *compare id. with* PageID. 137-38 & 139-40). On the same date as the ALJ's opinion, that is, October 11, 2019, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID.242); the Appeals Council denied Ford's request for review on August 10, 2020 (*see id.,* PageID. 65-67). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to major depressive disorder, generalized anxiety disorder, degenerative joint disease of the right knee, status-post ORIF of the right tibia,

---

appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[3]    As explained in the ALJ's decision, due to a prior decision granting Plaintiff benefits for a closed period, Plaintiff's onset date of disability was December 14, 2017. (*Compare* Doc. 15, PageID. 88 *with id.,* PageID. 85-86).

status-post removal and replacement of right ankle hardware, degenerative disc disease, and obesity.  The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.      The claimant has the following severe impairments: major depressive disorder; generalized anxiety disorder; degenerative joint disease of the right knee; status post fracture of the right femur; status post open reduction and internal fixation (ORIF) of the right tibia; status post removal and replacement of the right ankle hardware; degenerative disc disease; and obesity (20 CFR 404.1520(c)).**

.      .      .

> **4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).**

.      .      .

> **5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently push and pull with her left lower extremity; she can occasionally climb ramps and stairs, kneel, crouch, or crawl; she can frequently balance and stoop; she should never climb ladders, ropes or scaffolds; she should have no exposure to hazards such as unprotected heights and dangerous machinery; she would be able to understand, remember and carry out simple instructions and tasks for 2 hour blocks of time; she can have only occasional work-related interaction with supervisors, co-workers, and the general public; she would be able to tolerate changes in the workplace that are infrequent and gradually introduced; she would [have] to alternate between sitting and standing every 45 minutes for 1-3 minutes but would remain on task.**

.      .      .

> **6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

.      .      .

**7.     The claimant was born on April 19, 1976 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).**

.     .     .

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 10, 2016, through the date of this decision (20 CFR 404.1520(g)).**

(Doc. 15, PageID. 88, 92, 94, 98, 99 & 100).

## II. Standard of Review and Claims on Appeal

The scope of this Court's review is limited to determining whether the

Commissioner of Social Security, through the ALJ, applied the correct legal standards

and whether the ALJ's findings are supported by substantial evidence. *Crawford v.*

*Commissioner of Social Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are

conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial

evidence is defined as more than a scintilla and means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

*Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether

substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

The Commissioner of Social Security employs a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. This sequential evaluation process considers:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[5] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step of proving that she is unable to perform her

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[5]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

On appeal to this Court, Ford asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's decision violated 20 C.F.R. § 404.1520(a)(3) by finding the treating physician's opinion not persuasive and misrepresenting the evidence in order to discredit the opinion of the treating physician; and (2) the ALJ failed to fulfill her duty at step 5 of the sequential evaluation process to identify jobs existing in significant numbers in the national economy that she can perform. (*See* Doc. 17, PageID. 912).

A.     **Treating Physician's Opinion**.  As indicated above, RFC comes into play at the at the fourth and fifth steps of the sequential evaluation process. *See* 20 C.F.R. §

404.1520(e) ("We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . and at the fifth step of the sequential evaluation process . . . to determine if you can adjust to other work . . . ."). In determining a claimant's RFC, which is "'that which an individual is still able to do despite the limitations caused by his or her impairments[,]'" the ALJ "considers all the evidence in the record[.]" *Washington v. Social Sec. Admin., Commissioner,* 503 Fed.Appx. 881, 882-83 (11th Cir. Jan. 15, 2013), quoting and citing *Phillips, supra,* 357 F.3d at 1238.[6] Moreover, at the fifth step of the sequential evaluation process, the Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted).

As part of the process of determining a claimant's RFC, that is, "the most [she] can still do despite" the limitations caused by her impairments, 20 C.F.R. 404.1545(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining physicians and, indeed, this issue is often at the forefront in social security cases. *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for

---

[6]    The responsibility for making the residual functional capacity determination at the fourth step of the sequential evaluation process rests with the ALJ, *see, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."), who must "'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case." *Phillips, supra,* 357 F.3d at 1238 (alteration in the original), quoting 20 C.F.R. § 404.1520(e).

claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency."). "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

The ALJ analyzed the opinion evidence of Ford's treating physician, Dr. Maurice J. Fitz-Gerald, in the following manner:

> There is also a Treating Source Statement from M.J. Fitzgerald, M.D., the claimant's primary care physician. Although the claimant has been treated by this physician for a number of years, his assessment and opinion is not consistent with the great weight of the evidence in the file and notabilty (sic) conflicts with the testimony of the claimant who indicated that she could stand for 20 to 30 minutes at one time. He indicated she could stand

for 1 hour total in a day. I note that the majority of the appointments the claimant has had at the Fitz-Gerald Clinic are with a nurse practitioner and not the actual doctor. At the last appointment at the clinic, the positive musculoskeletal findings were related to knee and back pain and not the issues associated with the accident. Further, the significant limitations in lifting opined by Dr. Fitzgerald are not supported by the treatment records indicating that the claimant's symptoms have improved with medication and that she is able to complete her activities of daily living as previously discussed. For these and other reasons I am not persuaded by these opinions.

(Doc. 15, PageID. 97) (internal citation omitted).

There can be little question but that the ALJ in this case specifically addressed the supportability and consistency factors (*see id.*), as required by the Commissioner's new regulations, *see Swingle, supra,* at *2. Nevertheless, Ford contends that the ALJ erred in finding Dr. Fitz-Gerald's opinion(s) unpersuasive by misrepresenting the evidence, stressing that there is nothing inconsistent between claimant's testimony that she could stand for 20 to 30 minutes at one time and Dr. Fitz-Gerald's finding that she can only stand or walk a total of one hour in an eight-hour workday (*see* Doc. 17, PageID. 919-20; *compare id. with* Doc. 15, PageID. 97 & 785 (Fitz-Gerald's Physical Medical Source Statement)). In addition, Plaintiff argues that the ALJ apparently "intended to only evaluate Ms. Ford regarding the effects of her accident, not as a whole person[]" given her observation that "'[a]t the last appointment at the clinic, the positive musculoskeletal findings were related to knee and back pain and not the issues associated with the accident.'" (Doc. 17, PageID. 920).

The undersigned cannot agree with Plaintiff's arguments about the ALJ's analysis of Dr. Fitz-Gerald's opinions and here is why: First, to the extent that the ALJ was mistaken about the evidence, any such mistake was to her detriment because she noted Plaintiff's ability to stand for 20 to 30 minutes at one time was inconsistent with

Dr. Fitz-Gerald's finding that Plaintiff can stand for 1 hour out of an 8-hour workday. (*See* Doc. 15, PageID. 97; *compare id. with id.,* PageID. 785). The evidence of record, of course, reflects that Dr. Fitz-Gerald found that Plaintiff can only stand ***or walk*** a total of one (**1**) hour in an 8-hour workday (*id.*), which is a distinction with a difference inasmuch as an ability to stand for 20 to 30 minutes at one time, combined with Plaintiff's testimony that she can walk a half a football field (at one time) before she need change position (Doc. 15, PageID. 130), is indicative of an ability to stand or walk for **more** than one hour in an 8-hour workday. Accordingly, the undersigned finds that no error was committed in this regard because it is clear from Plaintiff's own testimony that she has the ability to stand or walk more than one hour in an 8-hour workday. As for the comment about Ford's last visit at the Fitz-Gerald Clinic, the undersigned does not regard that as a refusal by the ALJ to consider Plaintiff as whole person;[7] instead, it was meant as a "stab" at Dr. Fitzgerald's physical RFC findings because Ford's primary care doctor drew a direct line to those restrictions from "[p]ain to ® leg—due to rods in the distal femur and tibia[.]" (Doc. 15, PageID. 785; *compare id. with id.,* PageID. 97). In other words, because Dr. Fitz-Gerald directly linked Plaintiff's physical restrictions to pain resulting from the post-accident placement of rods in her distal femur and tibia he left his opinions open to the attack made by the ALJ, which focused on Plaintiff's more

---

[7]       The ALJ in this case considered Plaintiff as a whole person, as she discussed not just the car accident history but, as well, Plaintiff's later problems with her right knee and back. (*See* Doc. 15, PageID. 95-96).

recent complaints of right knee pain and back pain (that is, pain not directly linked to

Plaintiff's post-accident operations to her right distal femur and tibia).[8]

    This Court finds no error in the way the ALJ evaluated the persuasiveness of Dr.

Fitz-Gerald's medical opinion[9]; therefore, Plaintiff's first claim on appeal is **rejected.**

    **B.**    **Whether the Commissioner Satisfied her Burden of Proof at Step 5 of**

**the Sequential Evaluation Process**. Ford also contends that the ALJ failed to fulfill her

---

[8]    If anything, the ALJ was pointing out Dr. Fitz-Gerald's failure to consider Ford as a whole person.

[9]    While Plaintiff suggests that the ALJ pointed to nothing in the record evidence contradicting Dr. Fitz-Gerald's RFC opinion (*see* Doc. 921, PageID. 921), the undersigned cannot agree. Indeed, the ALJ referenced findings on imaging of Ford's right knee and mild examination findings on more recent examinations (that is, examinations occurring after Fitz-Gerald's December 12, 2018 opinion) as contrary to "the level of limitation alleged by the claimant or a ***finding*** that the impairments associated with her knee produce disabling limitations." (Doc. 15, PageID. 95 (emphasis supplied); *see also id.,* PageID. 95-96 (ALJ's evaluation of Plaintiff's back)). And the undersigned need agree with the ALJ that the findings on imaging of Ford's right knee (*compare id.,* PageID. 766 (October 5, 2018 MRI of the right knee showed no internal derangement and only a small amount of patellofemoral degenerative joint change) *with id.,* PageID. 783 (x-rays of the right knee on August 29, 2018 revealed mild arthritis with slight loss of joint space)) and more recent mild findings on physical examination, particularly from Dr. Bryan King at Total Pain Care LLC (*see, e.g., id.,* PageID. 843 (July 24, 2019 examination of the right knee revealed no swelling or ecchymosis, some tenderness along the medial aspect of the proximal tibia and adjoining joint line but no effusion or crepitus, range of motion of 0 to 110 degrees with pain produced only at the end of flexion, intact sensations, normal and symmetrical reflexes, a normal gait pattern with no limp, and negative McMurray, Apley, Anterior drawer, Lachman, Pivot shift, Valgus stress, Varus stress, Posterior sag, Patellar compression, and Patellar Apprehension tests; and further examination of the right lower extremity showed no tenderness or deformity, unremarkable range of motion, no gross instability, and normal strength and tone)), do not support Dr. Fitz-Gerald's very restrictive limitations noted in the physical RFC, particularly as they relate to Plaintiff's abilities to sit, walk, and stand in an 8-hour workday, as well as he ability to lift and/or carry weight (*see id.,* PageID. 785 (finding plaintiff can sit 4 hours in an 8-hour workday and stand or walk 1 hour in an 8-hour workday, and also finding that plaintiff can only lift and/or carry 5 pounds occasionally to 1 pound frequently for 1 hour in an 8-hour workday and 10 pounds occasionally to 5 pounds frequently for 1 hour in an 8-hour workday)).

    As an additional aside, the Court would note that substantial evidence exists in the record supporting the ALJ's RFC determination, as outlined by the ALJ. (*Compare* Doc. 15, PageID. 94-98 *with id.,* PageID. 503, 680-705, 759-766, 777-83, 798-806, 809-10, 814-17, 824, 829-40, 842-45, 848-49, 857-79, 887-89, 894-96 & 898-906).

duty at step five of the sequential evaluation process by failing to identify jobs existing in significant numbers in the national economy that she can perform because the VE, upon whom the ALJ relied in making her fifth step denial of benefits, "did not provide a basis for the numbers of jobs she identified." (Doc. 17, PageID. 922; *see also id.,* PageID. 921-24). More specifically, Plaintiff argues that none of the three jobs identified by the VE from the Dictionary of Occupational Titles ("DOT")—addresser, document preparer, and surveillance system monitor—exist in the Occupational Outlook Handbook (or any other recent vocational publication, like the Standard Occupational Classification, the 2010 Census Occupation Index, or in the Occupational Information Network ("O*NET")) and, therefore, none of these sources would support the VE's testimony regarding the numbers of each jobs in the national economy. (*See id.,* PageID. 923-24). Indeed, according to Plaintiff, none of the three identified jobs exist as stand-alone jobs in the national economy, according to more recent vocational publications; they only exist in the vastly outdated DOT. (*Id.*, PageID. 924). Therefore, Plaintiff contends the VE's testimony is not reliable and that the ALJ erred in relying upon that testimony to meet her burden of showing that there are jobs in the national economy existing in significant numbers that the claimant can perform.

A review of the hearing transcript reveals that after the ALJ confirmed with Sabrina Singleton her qualifications and familiarity with jobs that exist in the national economy, Plaintiff's attorney advised the ALJ that he had no objection to Singleton serving as a vocational expert. (Doc. 15, PageID. 134-35). The ALJ then posed a hypothetical question to the VE (*see id.,* PageID. 136 & 137), which garnered the

following regarding work at the sedentary exertional level that the hypothetical individual

could perform:

> Yes, at the sedentary exertional level first example would be a surveillance system monitor, DOT is 379.367-010, SVP of 2. There's approximately 5,000 jobs in the national economy. Second example would be an addresser, DOT is 209.587-010, SVP of 2, and there's approximately 6,000 jobs in the national economy. Third example is a document preparer, DOT is 249.587-018, SVP of 2, and there's approximately 46,000 jobs in the national economy.

> Q    And is this a representative sampling, Doctor?

> A    It is, Your Honor.

> Q    And is your testimony consistent with the DOT?

> A    Your Honor, testimony regarding interaction with the public, co-workers, and supervisors is not specified in the DOT and that is based off of my professional education, training, and work experience.

(*Id.,* PageID. 138). The ALJ later made two clarifications/modifications to her

hypothetical. (*See id.,* PageID. 139-40).

> Q    . . . For surveillance system monitor, . . ., addresser, and document preparer, if the individual would need to alternate between sitting and standing, let's say, every hour for one to three minutes, but they would remain on task what impact, if any, would that have on surveillance system monitor, addresser, and document preparer?

> A    Your Honor, based on my professional experience[,] it wouldn't have any impact. Those jobs would still be relevant.

> Q    Okay. And at the same job numbers?

> A    Yes, Your Honor.

> Q    Okay. If I reduce that to needing to alternate between sitting and standing every 45 minutes, again, for one to three minutes, but again, would remain on task how would that impact those jobs, if any?

> A    . . . [T]hey would still be relevant, Your Honor.

> Q    And at the same job numbers, Doctor?

13

> A      Yes, Your Honor.
>
> Q      And is that based on the DOT, ma'am, or is that based on your knowledge, experience, and training, and observing these jobs in the field?
>
> A      It's based on my knowledge, experience, and training, Your Honor.

(*Id.*). Plaintiff's attorney then closed questioning of the vocational expert by asking when the surveillance system monitor job was last updated in the DOT (*id.,* PageID. 140), to which the VE replied that she had no "direct answer for that question. I do know the DOT is outdated." (*Id.*). Plaintiff's counsel, however, never challenged the VE's testimony as unreliable (or even hinted that it was unreliable) and offered no evidence from other vocational publications. (*See id.,* PageID. 136-40). Moreover, a clear reading of that testimony establishes that the VE relied not solely on the DOT to establish the number of jobs in the national economy but also on her knowledge, experience, and training. (*Compare* Doc. 15, PageID. 138 *with id.,* PageID. 139-40).

As alluded to earlier, at Step 5 of the sequential evaluation process, the Commissioner of Social Security bears the burden of establishing that there are sufficient jobs in the national economy that the claimant can perform in light of her age, education, work experience, and RFC. *Winschel v. Commissioner of Social Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). To carry this burden, the Commissioner may "take administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles ("DOT"), the County Business Patterns published by the Bureau of the Census, the Census Reports prepared by the Bureau of the Census, the Occupational Analyses prepared for the

14

SSA by various State employment agencies, and the Occupational Outlook Handbook published by the Bureau of Labor Statistics. 20 C.F.R. § 404.1566(d)(1)-(5). In addition, at the fifth step, "an ALJ may rely solely on the testimony of a VE in determining whether work is available in significant numbers in the national economy that a claimant is able to perform. . . . For the testimony to constitute substantial evidence, 'the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Hurtado v. Commissioner of Social Sec.,* 425 Fed.Appx. 793, 795 (11th Cir. Apr. 25, 2011), citing and quoting *Jones v. Apfel,* 190 F.3d 1224, 1229 & 1230.

Here, the ALJ posed a hypothetical question to the VE involving a claimant with a RFC consistent with Ford's who was of Ford's age, education and who had the same work history. In response, the VE stated the hypothetical claimant could perform three sedentary jobs existing in the national economy: addresser, document preparer, and surveillance system monitor. And because it is clear from the above discussion that substantial evidence supported the ALJ's determination regarding Ford's RFC, the VE's testimony based on the limitations proposed by the ALJ constitutes substantial evidence that Ford could perform jobs existing in the national economy. *See Hurtado, supra,* 425 Fed.Appx. at 795 (recognizing a VE's testimony may serve as substantial evidence that jobs exist in the national economy that the claimant can perform, provided the ALJ poses a hypothetical question comprising all the claimant's impairments).

Nevertheless, Ford maintains that the VE's testimony was unreliable and should be disregarded because the expert relied on job listings in the outdated DOT and those job listings, that is, work as an addresser, document preparer, and surveillance system monitor, do not exist in more recently updated information available from the

Occupational Outlook Handbook, the Standard Occupational Classification, the 2010 Census Occupation Index, or in the Occupational Information Network ("O*Net") (that is, these newer publication do not recognize them as stand-alone jobs). This Court disagrees with Plaintiff's argument for a number of reasons.

As recognized above, the Commissioner's regulations allow the agency to take notice of the DOT but takes no mention of the O*Net or any of the other publications specifically referenced by the Plaintiff in her brief, with the exception of the Occupational Outlook Handbook. 20 C.F.R § 404.1566(d)(1)-(5); *see Tisdale v. Social Sec. Admin., Commissioner,* 806 Fed.Appx. 704, 711 (11th Cir. Mar. 16, 2020) (recognizing that the Commissioner's regulations make no mention of the O*Net). Accordingly, the undersigned discerns no error in the ALJ in this case relying on the DOT,[10] which she is required to consider in conjunction with the VE's testimony, *see id.* (citations omitted), as opposed to sources which are not mentioned in the regulations as containing reliable data, *id.*, particularly, where, as here, this other vocational information was not discussed with the ALJ or VE during the hearing. Indeed, as occurred in *Webster v. Commissioner of Social Sec.,* 773 Fed.Appx. 553, 555 (11th Cir. May 16, 2019), during

---

[10] The DOT is an acceptable source to provide employment data/numbers. *Compare* 20 C.F.R. § 404.1566(d)(1) (recognizing that the Commissioner may take administrative notice of reliable job information available from the DOT) *with Williams v. Commissioner of Social Sec.,* 2017 WL 2115985, *9 (M.D. Fla. May 16, 2017) ("In this case, the vocational expert relied on the DOT to provide employment data and the DOT is an acceptable source to provide this information."), *appeal dismissed,* 2017 WL 4877285 (11th Cir. Sept. 1, 2017); *see Viverette v. Commissioner of Social Sec.,* 13 F.4th 1309, 1311 (11th Cir. 2021) ("The Dictionary of Occupational Titles, published by the Department of Labor, contains descriptions of thousands of jobs available in the national economy, and is used by the Commissioner of Social Security to adjudicate benefit applications by claimants.").

the hearing in this case, Ford "did not question the VE's qualifications and the questions that [s]he posed to the VE did not address h[er] present concerns about the reliability of the VE's testimony." To be sure, Ford did ask the VE when the surveillance system monitor job was last updated in the DOT, which prompted the response that the DOT was outdated, but this question does not in any manner address her present concerns about the reliability of the VE's testimony based upon the purported non-existence of the three jobs identified by the VE during the hearing.[11] Besides, the VE's testimony indicates that she relied on her own knowledge, experience, and training[12] as well as the DOT; therefore, "[t]he VE properly considered the hypothetical scenario that the ALJ presented concerning the same impairments as [Ford]." *Webster, supra.*

In light of the foregoing and because a reasonable person would accept the VE's testimony—which was based on her own knowledge, experience, and training, as well as the DOT—as being adequate to support a conclusion that Ford is able to perform other work that exists in the national economy, the ALJ's fifth-step determination is

---

[11]    As a result, this Court finds, as did the Eleventh Circuit in *Valdez v. Commissioner of Social Sec.,* 808 Fed.Appx. 1005 (11th Cir. Apr. 23, 2020), that it is foreclosed from considering information regarding the purported non-existence of the jobs identified by the VE during the hearing (the jobs of addresser, document preparer, and surveillance system monitor) based upon information contained in the Occupational Outlook Handbook, the Standard Occupational Classification, the 2010 Census Occupation Index, and the O*NET because the Plaintiff did not present the information from these vocational publications to the ALJ or object to the VE's testimony. *See id.* at 1010. Therefore, this Court is left with the VE's testimony that Ford was capable of working in 57,000 jobs in the national economy, which number certainly constitutes substantial evidence to support the ALJ's step five determination. *See, e.g., Atha v. Commissioner, Social Sec. Admin.,* 616 Fed.Appx. 931, 935 (11th Cir. June 26, 2015) (23,800 jobs nationally constitute a significant number).

[12]    "The Social Security regulations provide that the ALJ may rely on a VE's knowledge and expertise, and they do not require a VE [to] produce detailed reports or statistics in support of her testimony." *Bryant v. Commissioner of Social Sec.,* 451 Fed.Appx. 838, 839 (11th Cir. Jan. 4, 2012).

supported by substantial evidence and is, therefore, affirmed. *Compare Brooks v. Barnhart,* 133 Fed.Appx. 669, 670 (11th Cir. June 1, 2005) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number.") *with Pace v. Commissioner of Social Sec.,* 760 Fed.Appx. 779, 781 (11th Cir. Jan. 14, 2019) ("The question . . . is not whether the expert's testimony is supported by substantial evidence. It is whether the ALJ's decision is supported by substantial evidence.").

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff a period of disability and disability insurance benefits be affirmed.

**DONE** and **ORDERED** this the 7th day of February, 2022.

s/P. Bradley Murray_____
**UNITED STATES MAGISTRATE JUDGE**

18